Lonnie Earl JOHNSON, Appellee,

v.

The STATE of Texas.

No. 103–93.

Court of Criminal Appeals of Texas, En Banc.

March 9, 1994.

Robert A. Morrow and Alvin Nunnery, Houston; Janet Morrow, of counsel, for appellee.

John B. Holmes, Jr., Dist. Atty., Mary Lou Keel, and Di Glaeser, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLEE'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW*

OVERSTREET, Judge.

Appellee was indicted for the offense of capital murder, alleged to have occurred on or about August 15, 1990. The trial court granted his motion to suppress his written statement. The State appealed that suppression ruling. The Texarkana Court of Appeals reversed the suppression ruling and held that the statement is admissible. *State v. Johnson,* 843 S.W.2d 252 (Tex.App.—Texarkana 1992). Both appellee and the State appealed the court of appeals' ruling and sought discretionary review by this Court.

## I. SUMMARY OF PERTINENT FACTS

The trial court conducted a hearing on appellee's suppression motion. Thereafter the trial court entered findings of fact and

conclusions of law. Based upon that hearing and the trial court's fact-findings, the record reflects that on August 15, 1990, police discovered two bodies in Harris County. During the course of investigation, appellee emerged as a suspect. Information was received that he was possibly in Austin. Harris County investigators received assistance from police in Austin. On August 29, Austin investigators located appellee's girlfriend in Austin. She gave oral and written statements implicating appellee in the Harris County murders. Around midnight, her written statement was FAXed to Harris County investigators, who proceeded to try to obtain a warrant for appellee's arrest. In the meantime during the early morning hours of August 30, Austin investigators, in returning the girlfriend to her car located in the parking lot of her place of employment, observed appellee enter her car. Police moved in and arrested him there on that parking lot in Austin. At that time, Harris County investigators were still in the process of securing an arrest warrant; thus the arrest was made without a warrant. Subsequently, in response to police interrogation, appellee gave the written statement which is the subject of the suppression claim. The Harris County investigators were able to get an arrest warrant issued that morning, whereupon they then drove to Austin.[1]

## II. THE STATE'S GROUND

■ As noted above, the State successfully appealed the trial court's order suppressing appellee's written statement. However, we granted one of the State's grounds for review challenging a portion of the Texarkana Court of Appeals' decision. Specifically, that ground asked "[w]hether the court of appeals misinterpreted the trial court's findings of fact by concluding that the trial court 'made no finding that [appellee] burglarized [his girlfriend]'s car, and no such inference can be made from the facts that the trial court found.'" Particularly, the State takes issue

with the court of appeals' statement that the trial "court did not indicate acceptance of anything that [the officer-in-question] testified to as fact." *State v. Johnson*, 843 S.W.2d at 255. The State insists that such a conclusion arose from a misinterpretation of the trial court's findings of fact, including placing undue emphasis on the format of the findings, misreading a particular finding, and ignoring the legal conclusions. It adds that the format of the findings, which referenced the record and denoted which witnesses testified to which facts, "does not transmogrify the findings into something else."

The State points out that it cited finding number 19 to demonstrate that the trial court had found that appellee committed the offense of burglary of a motor vehicle in the presence of police to justify his warrantless arrest, i.e. finding 19 recited evidence that shows the commission of the burglary of a motor vehicle. It also accuses the court of appeals of "simply focus[ing] on the disputed finding number 20 and reach[ing] the wrong conclusion." It asks this Court to correctly interpret the trial court findings.

Finding 19, which included subsections (a) through (i), detailed one of the Austin officer's testimony "concerning the events and circumstances leading to his decision to arrest the defendant...." There was some question as to appellee's right to be inside his girlfriend's car, as she had made a police report in early August regarding appellee stealing the car but that case had apparently not been followed up, i.e. was no longer active, because her car had been recovered in Tomball, Texas and she had been fairly evasive about her involvement with appellee. There was also testimony that because the girlfriend had allowed appellee to use the car in the past, the charge on the offense report had been changed from auto theft to unauthorized use. There was also testimony that the girlfriend had indicated to police in the parking lot that appellee did not have her permission to be inside the car at that time.

1. More specifically, the record reflects that appellee was arrested at approximately 1:30 a.m. in Austin, and that the arrest warrant was signed at 3:50 a.m. in Harris County. One of the Harris County investigators testified that they then contacted one of the Austin investigators, and indicated that they remained in contact with Austin investigators via mobile phone on the way to Austin. The record also reflects that Appellee's written statement began at approximately 5:00 a.m. and was witnessed and signed at approximately 7:00 a.m.

Appellee testified that he had permission to enter the car and indicated that he had on occasion taken her to and picked her up from work and had waited in the car when they had lived in Houston and in Austin. He insisted that he was allowed to use her car. Though he admitted that he did not have keys to the car, he stated that it was unlocked. After some inconsistency with an offense report regarding the details of the arrest was pointed out, the Austin officer testified that he observed appellee walk up to the car and did not see him break in; that he just saw the car's dome light come on. Appellee testified that he entered the unlocked car and waited for his girlfriend for awhile, then since she had not returned he got out to go call a taxicab to return him to their motel room. The Austin officer stated that "[t]he burglary of motor vehicle just happened to coincide with this timing on us locating him."

Finding 20 states:

> Due to unresolved contradictions in that portion of [the officer-in-question]'s testimony wherein he relates that the reason he arrested the defendant was that the defendant did not have permission to be in [the girlfriend]'s car is not credible. [The officer-in-question]'s clearly stated reason for arresting the defendant was "because of the capital murder case" and this defendant was not arrested for a burglary of a motor vehicle (R. 62).

The State reiterates that the trial court's "findings were findings[,]" and its "efforts to demonstrate that [its] findings were supported by the evidence did not change [its] findings into summaries." The State ultimately asserts that since the trial court found that appellee committed burglary of a motor vehicle in the presence of the police, and that finding is supported by the evidence, his initial warrantless arrest was authorized by Article 14.01, V.A.C.C.P.

The court of appeals' statement that the trial "court did not indicate acceptance of *anything* [emphasis added] that [the officer-in-question] testified to as fact" may have somewhat overstated the trial court's reli-

ance upon his testimony, particularly in light of the trial court's apparent reliance upon that officer's testimony in making some of its other findings of fact. For example, finding 18, stating when and by whom appellee was arrested, appears to be based upon the officer's testimony; and in fact appears to cite a page in the statement of facts in which that officer's testimony appears. Another fact finding coincides with that officer's testimony about the call-back magistrate system in Austin, and likewise appears to cite pages in the statement of facts corresponding with that testimony.

Nevertheless, the court of appeals was quite correct in concluding that a passage from finding 20 "does not indicate that the [trial] court affirmatively found facts indicating that [appellee] did burglarize the vehicle." *State v. Johnson*, 843 S.W.2d at 255. Finding 19 indicates that it is detailing the officer-in-question's testimony, i.e. it states:

> 19. [The officer-in-question]'s testimony as reflected by the record concerning the events and circumstances leading to his decision to arrest the defendant is set out below:

It does not appear that the trial court was adopting that "testimony as reflected by the record" as a fact finding, but rather found as a fact that such was the officer's "testimony as reflected by the record...." In fact, finding 20, as quoted above, thereafter indicates that the trial court found that a portion of the officer's testimony about the arrest was "not credible"; i.e. the trial court apparently did not believe it and found it to be untrue. We also note that in the "Conclusions of Law" section, the trial court states:

> 1. The warrantless arrest of the defendant was without probable cause and therefore illegal in the absence of exigent circumstances.

Such a conclusion of law is quite consistent with a finding that appellee did not burglarize his girlfriend's car since had he been seen by the officers committing such offense there would have been probable cause to arrest him for such.[2] Burglary of a vehicle requires

---

2. The State's brief points out that "a warrantless arrest without probable cause is illegal even in

the presence of exigent circumstances." It also asserts that the trial court's addressing the merits

entry without the effective consent of the owner and with the intent to commit a felony or theft. V.T.C.A. Penal Code, § 30.04(a).

Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense.

*Amores v. State,* 816 S.W.2d 407, 413 (Tex. Cr.App.1991). This Court has held that the test for probable cause for an arrest without a warrant is:

Whether at that moment the facts and circumstances within the officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested person) had committed or was committing an offense.

*Stull v. State,* 772 S.W.2d 449, 451 (Tex.Cr. App.1989) (citations omitted).

It was undisputed that appellee entered the vehicle, but his consent to do so was hotly contested. The girlfriend did not testify, but officers indicated that she had indicated that he did not have such permission. However, as noted above, appellee testified at the hearing that he did have her permission. Also, there was testimony from appellee and from the officers that there was a relationship between appellee and his girlfriend, including living together with the girlfriend and conceiving his child. Also, as noted above, there was testimony that the prior report of appellee's "theft" of the car had not been followed up on, i.e. was no longer active, because her car had been recovered and she had been fairly evasive about her involvement with appellee, and the girlfriend had allowed appellee to use the vehicle in the past. There was no testimony that appellee entered the vehicle with the intent to commit a felony or theft.

■ It is well-settled that the trial court is the sole judge of the credibility of witnesses

at a hearing on a motion to suppress evidence obtained in a search/seizure, and that it may choose to believe or disbelieve any or all of witnesses' testimony. *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Cr.App.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Cr.App.1993). As noted above, the trial court's findings indicate that it found that a portion of the officer's testimony about the arrest was "not credible." The record does support a conclusion that there was *not* probable cause to believe that appellee was committing the offense of burglary of a vehicle, i.e. entering his girlfriend's car without her consent with the intent to commit a felony or theft.

Based upon the record, including the trial court's Findings of Fact and Conclusion[s] of Law, we conclude that the Texarkana Court of Appeals correctly interpreted the trial court's findings regarding burglary of a vehicle. Accordingly, the State's ground for review is overruled.

## III. APPELLEE'S GROUNDS

We granted appellee's three grounds for review which question the court of appeals' decision reversing the trial court's suppression decision. These three grounds read as follows:

Does Art. 44.01(a)(5), V.A.C.C.P. grant absolute discretion to the prosecutor to appeal any pretrial ruling suppressing evidence, a confession or admission simply by certifying that it is of substantial importance in the case, as the court held below, or may the defendant awaiting trial challenge that certification in the trial court and on appeal?

Is the attenuation doctrine an exception to Art. 38.23, V.A.C.C.P.?

Does the obtaining of an arrest warrant *during* the interrogation which produces the written statement transform the illegal warrantless arrest into a legal one so as to

in overruling appellee's pretext arrest claim indicates that the trial court obviously did not find that no burglary was committed. However, we do not view such claims to be dispositive of the

State's ground for review, i.e. whether the court of appeals misinterpreted the trial court's findings of fact.

legitimize the statement? [Emphasis in original.]

## A. Article 44.01(a)(5)

As noted above, ground one questions whether Article 44.01(a)(5), V.A.C.C.P. grants the prosecutor absolute discretion in appealing a pretrial suppression ruling, or whether a defendant can challenge such. Article 44.01(a)(5) provides for the State to appeal an order granting "a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached * * * and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case." Appellee insists that a defendant should have the right to challenge the State's certification, in particular the assertion that the evidence is of substantial importance. He suggests that "[t]he State should have been required to submit to cross examination on the issue of 'substantial importance.'"

We have established a policy of statutory interpretation by focusing upon the literal text of the statute to discern the fair objective meaning thereof. *Hernandez v. State*, 861 S.W.2d 908, 909 (Tex.Cr.App.1993); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr. App.1991). Recently, after noting that only when the literal text of a statute is unclear or would lead to results so absurd that the Legislature could not have possibly intended them should courts resort to extraneous means in statutory interpretation, we concluded that "we w[ould] construe [Art. 44.01] according to its plain meaning" "[b]ecause, on its face, the literal text of [it] is clear[.]" *State v. Muller*, 829 S.W.2d 805, 808 (Tex.Cr. App.1992). "The plain meaning of the literal text of Article 44.01 is clear and unambiguous." *Id.* at 811. Since the literal text of Art. 44.01 is clear on its face, we "will not strain its plain meaning in order to give the statute a 'desirable' reading." *Id.* at 808.

■ The plain language of the literal text of Art. 44.01(a)(5) provides for the State to appeal a suppression order if jeopardy has not attached and the prosecuting attorney makes the above-noted requisite certification

to the trial court. It clearly sets forth the requirements for proceeding with such an appeal. In the instant cause, there is no claim that the State has not met those requirements. Appellee simply seeks to challenge the verity of the State's certification. Art. 44.01 does not include a provision for making such a challenge. The plain language of Art. 44.01(a)(5) simply requires the certification rather than any showing of the underlying basis for such.

We overrule appellee's first ground for review.

## B. Article 38.23

Appellee's second ground questions whether Article 38.23, V.A.C.C.P. allows for the use of the attenuation doctrine as an exception to the Texas exclusionary rule. Article 38.23 provides, among other things, that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

It also includes a specific exception for evidence that "was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause."

In *Garcia v. State*, 829 S.W.2d 796, 799 (Tex.Cr.App.1992) we examined Art. 38.23, and after noting the above-described "good faith" exception, we concluded that it contained no other exceptions. Because the statute did not include an "inevitable discovery" exception, we declined to find one therein, or to create one by judicial fiat. *Id.* at 800. We specifically stated that until the Legislature amends the statute, "we must enforce [it] as written, excluding all illegally obtained evidence, with the single exception as set out in the statute." *Id.*

Based upon *Garcia*, the trial court suppressed appellee's statement. It specifically stated in its "Conclusions of Law" that but for this Court's decision in *Garcia*, "the taint of the defendant's unlawful arrest was sufficiently attentuated [sic] to allow for the in-

troduction into evidence of the defendant's statement." The trial court stated that in light of *Garcia* it was not clear that the attenuation doctrine is applicable to the statutory exclusionary rule.

The State insists that *"Garcia* was a flawed opinion" which should be overruled, or alternatively, should be limited to its specific holding. It adds that the attenuation doctrine is not an exception to the exclusionary rule but rather is a test for its applicability. It suggests that Art. 38.23 embraces the attenuation doctrine because it requires the exclusion of evidence obtained in violation of the law, but "does not require exclusion of evidence obtained after violation of the law[,]" i.e. "there must have been a causal relationship between the legal violation and the obtaining of the evidence."

The court of appeals, while noting *Garcia* but concluding that its precedential value was weak and should therefore be limited to its specific holding regarding the inevitable discovery rule, concluded that "the attenuation doctrine continues to exist in Texas because it is less of an exception to Article 38.23 than it is a complement to the rule." *State v. Johnson,* 843 S.W.2d at 258. It concluded that since Art. 38.23 applies only when evidence is obtained as a result of illegal conduct on the part of police, the attenuation doctrine suggests that if the evidence is so attenuated from the illegal conduct that it cannot be said to be a product of the illegality, then Art. 38.23 does not apply. *Id.*

In *Bell v. State,* 724 S.W.2d 780, 787 (Tex. Cr.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987), after having determined that an arrest was improper, this Court next had to "determine exactly which evidence falls within the contemplated parameters of Art. 38.23[.]" While noting that Art. 38.23 provided that it must exclude all evidence obtained in violation of any provisions of the Constitution or laws of the State of Texas, it specifically pointed out "that evidence is not excluded simply because it is discovered or obtained at a point in time after an illegal detention." *Id.* This Court concluded that "to determine whether a confession has been tainted by a prior warrant-

less arrest that is illegal as a matter of state statutory law[, it] would utilize the four[-]part test established in *Brown[ v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) ][.]" *Id.* This Court proceeded to conduct such an analysis and concluded that while the immediate fruits of Bell's arrest, including his first confession, were tainted and should have been suppressed, the taint was removed by subsequent events and that Bell's second confession and other evidence were properly admissible (subject to a finding of voluntariness). *Id.* at 788–792. Ultimately, this Court concluded that Bell's second confession was voluntary and untainted, and, along with all evidence secured after the taint was removed by issuance of a warrant, was admissible. *Id.* at 793.

In *Self v. State,* 709 S.W.2d 662, 665–668 (Tex.Cr.App.1986), after noting the provisions of Art. 38.23, "the Texas exclusionary rule[,]" this Court likewise used the *Brown* analysis to determine whether Self's confession was the fruit of his illegal warrantless arrest. This Court concluded that though the conduct of the police was improper and illegal, "the taint of the illegal arrest was overcome[,]" thus the trial court did not err in admitting Self's confession into evidence. *Id.* at 668.

Likewise, in *Maixner v. State,* 753 S.W.2d 151 (Tex.Cr.App.1988), after conducting the *Brown* analysis, this Court concluded that that defendant's statements were not the product of his illegal arrest. In *Comer v. State,* 776 S.W.2d 191, 196–197 (Tex.Cr.App. 1989), while concluding that that defendant's statement should have been suppressed per Art. 38.23, this Court acknowledged that if the taint from the illegality of unlawful detention has been dissipated by the time a confession is taken, then the confession will not be excludable under Art. 38.23.

■ Thus, based upon the above-discussed cases, the attenuation doctrine is applicable to Art. 38.23's prohibition against evidence "obtained" in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be "obtained" therefrom. This is consistent with *Garcia's* precept that it is best to effectuate the legislative intent as is evidenced by

the plain language of the statute. *Garcia v. State*, 829 S.W.2d at 799. If the evidence is not "obtained" in violation of the law, then its admission into evidence is not in contravention of Art. 38.23. Thus, the attenuation doctrine is not an exception to Art. 38.23, but rather is a method of determining whether evidence was "obtained" in violation of the law, with "obtained" being included in the plain language of the statute. Accordingly, we overrule appellee's second ground for review.

### C. Court of Appeals' Attenuation Analysis

Appellee's third ground questions whether the obtaining of an arrest warrant during the interrogation which produces the written statement transforms the illegal warrantless arrest into a legal one so as to legitimize the statement. He asserts that it does not and that the facts of this case indicate that the taint from the arrest was not attenuated. He "suggests that far from attenuating the taint of an illegal arrest, the police action here aggravated that taint." The State responds that the court of appeals "evaluated the issue according to settled rules of law and accounted for all of the relevant evidence." It discusses the evidence and suggests that "[t]he trial court and the court of appeals correctly concluded that the taint of the arrest was attenuated."

▮ The court of appeals analyzed the attenuation issue pursuant to the provisions of *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and held that the trial court correctly concluded "that the taint of the illegal arrest was attenuated from the obtaining of [appellee]'s statement[,]" thus the statement was admissible. *State v. Johnson,* 843 S.W.2d at 260. In *Brown,* the United States Supreme Court noted the following four relevant factors to be considered in determining whether such taint was attenuated: 1) whether *Miranda* [3] warnings were given; 2) the temporal prox-imity of the arrest and the confession; 3) the presence of intervening circumstances; and particularly, 4) the purpose and flagrancy of the official misconduct.

Though appellee includes various arguments concerning all four of the factors, his ground for review as quoted above focuses upon whether the subsequent obtaining of an arrest warrant during the interrogation which was conducted after the warrantless arrest provides sufficient attenuation such as to legitimize the statement obtained from such interrogation.[4] The subsequent procurement of an arrest warrant was an intervening circumstance. *Bell v. State,* 724 S.W.2d at 791. As such, it was one of the relevant factors to be considered per *Brown.* All four factors must be considered and no one factor should be dispositive. After reviewing appellees' arguments, the record, the trial court's fact findings, and the court of appeals' analysis thereon, we conclude that the court of appeals' analysis and conclusion on the issue of attenuation of taint is adequate. *See, e.g., Little v. State,* 758 S.W.2d 551, 564–566 (Tex.Cr.App.1988), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *Maixner v. State,* 753 S.W.2d 151, 155–158 (Tex.Cr.App.1988); *Self v. State,* 709 S.W.2d 662, 665–668 (Tex.Cr.App.1986). Accordingly, we overrule appellee's third ground for review.

As we have overruled the State's and appellee's grounds for review the judgment of the court of appeals is affirmed.

McCORMICK, P.J., not participating.

CLINTON, J., dissents, adhering to views expressed in his separate opinions in *Garcia v. State,* 829 S.W.2d 796, at 800 (Tex.Cr.App. 1992), and *Bell v. State,* 724 S.W.2d 780, at 840 (Tex.Cr.App.1986).

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** He notes that he "discusses the warrant factor, upon which review was granted, in the context of the other three factors[.]" He also "submits that in the context of all the factors here, the obtain-ing of an arrest warrant, without any showing it had any impact upon [his] volition, was not an occurrence that *intervened* between the illegal arrest and [his] statement." [Emphasis in original.]