ACCEPTED
03-14-00541-CR
4859995
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/13/2015 11:23:23 AM
JEFFREY D. KYLE
CLERK

# No. 03-14-00541-CR

In the
Court of Appeals
Third District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

4/13/2015 11:23:23 AM

JEFFREY D. KYLE
Clerk

---

**Robert Rene Torres,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 299th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-12-302414

---

## STATE'S BRIEF

---

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

*Oral argument is not requested*

# Table of Contents

Index of Authorities ............................................................................ ii

Summary of the State's Argument ....................................................... 1

Standard of Review ............................................................................. 2

Argument ............................................................................................ 3

   Reply Point One: The warrantless blood draw did not violate the
   Fourth Amendment. ........................................................................ 4

   Reply Point Two: Assuming, arguendo, that the blood draw violated
   the Fourth Amendment, the exclusionary rules do not bar
   admission of the evidence. ............................................................. 11

Prayer ............................................................................................... 18

Certificate of Compliance and Service ............................................... 19

i

# Index of Authorities

## Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982) ................ 12, 16

*Breithaupt v. Abram*, 352 U.S. 432, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957) ................................................................................ 8

*Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 180 L. Ed. 285 (2011) ................................................................................ 16

*Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014) ................................................................................ 10

*Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) ................................................................................ 15

*Luquis v. State*, 72 S.W.3d 355 (Tex. Crim. App. 2002) ..................... 9

*Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013) ................................................................................ 5

*Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) ................................................................................ 8, 14

*Muniz v. State*, 851 S.W.2d 238 (Tex. Crim. App. 1993) ..................... 4

*Neesley v. State*, 239 S.W.3d 780 (Tex. Crim. App. 2007) ............... 6, 7

*People v. Youn*, 2014 Cal. App. LEXIS 799 (Cal. App. 2d Dist. Aug. 15, 2014) ................................................................................ 17

*Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d. 250 (2006) ................................................................................ 5

*Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008) ................. 5

*Shepherd v. State*, 273 S.W.3d 681 (Tex. Crim. App. 2008) ............... 2

*South Dakota v. Neville*, 459 U.S. 553, 103 s. Ct. 916, 74 L. Ed. 2d 748 (1983) ................................................................................ 8

*State v. Adkins*, 433 N.J. Super. 479, 81 A.3d 680 (App. Div. Dec. 20, 2013) ................................................................................ 14

*State v. Johnson*, 871 S.W.2d. 744 (Tex. Crim. App. 1994) ............... 13

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011) ............... 7

*State v. Laird*, 38 S.W.3d 707 (Tex. App.—Austin 2000, pet. ref'd) .. 16

*State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd) ................................................................................ 12

*State v. Mosely,* 348 S.W.3d 435 (Tex. App.—Austin 2011, pet. ref'd) 7

*State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014) ............................... 3, 4, 5, 9

*United States v. Brooks*, No. PWG-14-0053, 2014 U.S. Dist. LEXIS

67417 (D. Md. May 16, 2014) (mem. op.) ........................................17

*Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013)..........13

*Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985) ................................................................................................................ 8

**Statutes**

Tex. Code Crim. Proc. art. 38.23 ...................................................... 11

Tex. Transp. Code § 724.012......................................................... 4, 17

Tex. Transp. Code § 724.017............................................................. 8

## No. 03-14-00541-CR

In the
Court of Appeals
Third District
Austin, Texas

---

**Robert Rene Torres,**
Appellant

v.

**The State of Texas,**
Appellee

---

Appeal from the 299th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-12-302414

---

### STATE'S BRIEF

---

To the Honorable Third Court of Appeals:

Now comes the State of Texas and files this brief in response to that of the appellant.

### Summary of the State's Argument

*Reply Point One:* The warrantless blood draw did not violate the Fourth Amendment. The blood draw was mandated by Tex. Transp. Code § 724.011(b), and this statute is constitutionally reasonable under the Fourth Amendment. Alternatively, there was no

violation of the Fourth Amendment because the officer made a reasonable mistake of law in believing that there was a valid statutory mandate for the blood draw.

**Reply Point Two:** Assuming, *arguendo*, that the blood draw violated the Fourth Amendment,

1) the Texas exclusionary rule does not apply because the police did not violate the law as it existed at the time of the search, and

2) the federal exclusionary rule does not apply because the police were acting in good faith.

## Standard of Review

The appellate court reviews a ruling on a motion to suppress evidence for an abuse of discretion. The appellate court views the facts in the light most favorable to the trial court's decision. The appellate court reviews *de novo* the trial court's application of the law of search and seizure to those facts. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).

## Argument

As a starting point, the State acknowledges that the Texas Court of Criminal Appeals recently held that a warrantless blood draw, conducted pursuant to the mandatory blood draw statute, violated the Fourth Amendment because it did not fall under any recognized exception to the warrant requirement. *State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014).

The court's decision in *Villarreal* directly contradicts the first argument made by the State in Reply Point One, but the State continues to make this argument because *Villarreal* is not final. In fact, the Court of Criminal Appeals granted the State's motion for rehearing in *Villarreal* on February 25, 2015. *See id.*, 2015 Tex. Crim. App. LEXIS 201. The court may issue a different decision upon rehearing, especially since the court was split 5-4 and three of the judges who joined the majority opinion have recently left the court.

But even if this court holds that the blood draw violated the Fourth Amendment, the State maintains that the exclusionary rules do not bar admission of the evidence, as argued in Reply Point Two.

3

***Reply Point One: The warrantless blood draw did not violate the Fourth Amendment.***

**1) The blood draw was mandated by statute, and the statute is reasonable under the Fourth Amendment.**

***The blood draw was mandated by statute.***

As a starting point, the State argues that the warrantless blood draw in this case was mandated by statute: Tex. Transp. Code § 724.012(b)(3)(B) states that police "shall" take a specimen of breath or blood when they have reliable information that a suspect has two prior DWI convictions, as in this case.

The statute does not specifically state that blood draws should be undertaken "without a warrant." But if a warrant is required, the wording of the statute stating that the officer "shall" get a specimen would place an officer in violation of the law if the magistrate refuses to sign the officer's warrant. *See Villarreal*, 2014 Tex. Crim. App. LEXIS 1898, at *83 (Meyers, J., dissenting). Because this is an absurd result, the mandatory blood draw statute cannot be interpreted to require warrants. *Muniz v. State*, 851 S.W.2d 238, 244 (Tex. Crim. App. 1993) (stating that courts should prefer an interpretation of a statute that does not yield absurd results).

4

### *Courts conduct a traditional balancing test to evaluate the constitutionality of statutorily-mandated searches.*

When evaluating the constitutionality of statutorily-mandated searches, courts routinely apply a traditional Fourth Amendment balancing test, which weighs the statute's promotion of legitimate government interests against the intrusion on individual privacy. *See Maryland v. King*, __ U.S. __, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013); *Segundo v. State*, 270 S.W.3d 79, 96-99 (Tex. Crim. App. 2008); *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193, 165 L. Ed. 2d. 250 (2006). This balancing test approach is consistent with the plain language of the Fourth Amendment, which does not actually require a warrant or warrant exception, but rather, prohibits unreasonable searches.

The State acknowledges, however, that the Court of Criminal Appeals declined to conduct a balancing test in *Villarreal*, holding instead that the mandatory blood draw must fall under a recognized warrant exception. *Villarreal*, 2014 Tex. App. LEXIS 1898, at *59-75.

***A traditional balancing test weighs in favor of the constitutionality of Section 724.012(b)(3)(B).***

As a starting point, the State has a significant legitimate interest in the primary purpose of Section 724.012(b), which is to save lives and decrease the number of casualties caused by drunken drivers. *Neesley v. State*, 239 S.W.3d 780, 785 (Tex. Crim. App. 2007). Mandatory draws identify intoxicated drivers, so that the State can remove them from the roads through administrative license revocations. Mandatory draws also promote safety through their deterrent effect.

The State also has a legitimate interest in preserving evidence, both for administrative licensing hearings and criminal prosecutions. Timely blood alcohol evidence is indisputably the most probative evidence of intoxication, far more so than subjective observations, field sobriety tests, or retrograde extrapolation. The Texas Legislature acted reasonably in passing a law that requires police to secure this evidence, in serious cases, before it dissipates.

Reasonableness is also shown in that the statute does not leave blood draws to the discretion of the officer on the scene. Instead, the circumstances requiring blood draws are clearly set out in the statute, which was enacted by the Legislature, which is itself a neutral and

detached body. Clear guidelines also further the State's legitimate interest in readily applicable rules for officers in the field, which are not subject to second-guessing months and years down the road.

The law is narrowly tailored in scope. The statute only allows one useable blood draw, and it only applies to people who are arrested, based on probable cause, for driving while intoxicated on public roads. *Neesley*, 239 S.W.3d at 786; *State v. Mosely,* 348 S.W.3d 435, 444 (Tex. App.—Austin 2011, pet. ref'd).

The law also takes the gravity of the crime into consideration by mandating draws only in serious cases, such as felonies or cases with injuries.

Additionally, the search specified by the statute (a blood draw) is reasonable because blood testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. *State v. Johnston*, 336 S.W.3d 649, 659-60 (Tex. Crim. App. 2011).

Also, blood tests are commonplace and involve virtually no risk, trauma, or pain, and the Supreme Court has stated time and again that a blood draw is a minimally intrusive search that does not

constitute an unduly extensive imposition on an individual's privacy and bodily integrity. *See Schmerber*, 384 U.S. at 771; *Skinner* 489 U.S. at 625; *Winston v. Lee*, 470 U.S. 753, 761-62, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985); *South Dakota v. Neville*, 459 U.S. 553, 563, 103 s. Ct. 916, 74 L. Ed. 2d 748 (1983); *Breithaupt v. Abram*, 352 U.S. 432, 436-37, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957); *but see Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013).

The Transportation Code also limits who can draw blood and where it can be drawn. Tex. Transp. Code § 724.017; *Johnston*, at 661 (noting that Section 724.017 is reasonable under the Fourth Amendment).

Additionally, the law mandates testing only on people who are already under arrest. Arrestees have significantly diminished expectations of privacy. And arrestees are not free to leave, so the testing's interference with their freedom to move does not infringe on significant privacy interests. Drivers also have a reduced expectation of privacy and are subject to extensive regulations.

Finally, the defendant bears the burden of establishing that statutes are unconstitutional, courts presume that statutes are

8

constitutional and resolve all reasonable doubts in favor of their constitutionality, and the mere fact that opinions regarding constitutionality may differ is not a sufficient basis to strike down a statute. *Luquis v. State*, 72 S.W.3d 355, 363, 365-66 (Tex. Crim. App. 2002). The presumption of constitutionality afforded legislation should not to be disposed of lightly. Laws passed by elected representatives represent the will of the people. Of course, courts must safeguard against violations of the Constitution, but in determining what is "reasonable" under the Fourth Amendment, the fact that the Legislature has passed laws mandating these searches speaks volumes as to what the people of Texas believe is reasonable.

In sum, the search mandated by Section 724.012(b)(3)(B) is constitutionally reasonable.

The State acknowledges, however, that the Court of Criminal Appeals stated in *Villarreal* that a DWI suspect's privacy interest outweighs the State's interest in preventing drunk driving through warrantless searches. *Villarreal*, 2014 Tex. App. LEXIS 1898, at *67-69.

## 2) Alternatively, there was no violation of the Fourth Amendment because the officer made a reasonable mistake of law.

Recently, the Supreme Court held that an officer does not violate the Fourth Amendment if he stops the defendant based on a reasonable mistake of law. *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 540, 190 L. Ed. 2d 475 (2014).

The Court reiterated that the touchstone of the Fourth Amendment is reasonableness. *Id.* at 536. To be reasonable is not to be perfect. *Id.* Thus, the Fourth Amendment allows for searches and seizures based on reasonable mistakes. *Id.* In accordance with the reasoning in *Heien*, the officer in this case did not violate the Fourth Amendment if he drew the defendant's blood based on a reasonable mistake of law.

The officer clearly believed that there was a valid statutory mandate for a blood draw. 2RR 34-35. If the officer was mistaken, his mistake was reasonable. For years, Texas's police officers, prosecutors, defense attorneys, and judges have assumed that warrantless blood draws taken pursuant to the mandatory blood draw statute were constitutional. Challenges began only after the Supreme

Court's ruling in *McNeely,* which came down in 2013, after the 2012 blood draw in this case.

In sum, because the officer's mistake of law, if any, was reasonable, the search was lawful under the Fourth Amendment.

***Reply Point Two: Assuming, arguendo, that the blood draw violated the Fourth Amendment, the exclusionary rules do not bar admission of the evidence.***

**1) The Texas exclusionary rule does not apply because the police did not violate the law as it existed at the time of the search.**

The Texas exclusionary rule is codified in Tex. Code Crim. Proc. art. 38.23, which states:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
>
> (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith

reliance upon a warrant issued by a neutral magistrate based on probable cause.

The evidence is not barred by article 38.23 because the police officer did not obtain the evidence in violation of the Constitution because, at the time the evidence was obtained, Texas case law clearly held that alcohol dissipation alone constituted exigent circumstances, which justified a warrantless blood draw in DWI cases. *See Aliff v. State*, 627 S.W.2d 166, 170 (Tex. Crim. App. 1982); *and State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd) (stating, "It is a well-settled fact that alcohol in the blood dissipates quickly constitutes exigent circumstances"). Thus, at the time of the blood draw in this case, the search clearly fell under the exigent circumstances exception, which means the police did not obtain the evidence in violation of the Fourth Amendment, which means the Texas exclusionary rule does not apply.

To be clear, the State is not arguing for a *good faith exception* to article 38.23. Rather, the State is arguing that article 38.23 *does not apply* because the officer did not obtain the evidence in violation of the law.

The State's argument may appear to be a backdoor good faith argument, but the argument is in line with other statutory construction cases that have held that Article 38.23 does not apply when the evidence was not actually obtained in violation of the law. *See State v. Johnson*, 871 S.W.2d. 744, 750-51 (Tex. Crim. App. 1994) (no exclusion when there is attenuation of taint); *Wehrenberg v. State*, 416 S.W.3d 458, 467-70 (Tex. Crim. App. 2013) (no exclusion when there is an independent source).

In other words, the defendant cannot backdate a change in law to exclude evidence. To do so would twist the plain language of the statute because the evidence was not actually "obtained" in violation of the law. Rather, it was obtained in compliance with the law, which later changed.

Some courts have held that there was no change in the law and that *McNeely* merely clarified existing constitutional law. That may be true in other states, but it is not true in Texas. In Texas, case law had clearly established a *per se* exigency in DWI cases. *See Aliff*, 627 S.W.2d at 170; *Laird*, 38 S.W.3d at 713. *McNeely* specifically granted certiorari to resolve the split of authority among states on the

question of whether the natural dissipation it the bloodstream establishes a *per se* exigency. *See McNeely*, 133 S. Ct. at 1558. *McNeely* decided that there is no *per se* exigency. Thus, *McNeely* clearly overturned (i.e., changed) the law in several states, including Texas. *Cf. State v. Adkins*, 433 N.J. Super. 479, 484-93, 81 A.3d 680 (App. Div. Dec. 20, 2013) (stating that *McNeely* dramatically changed the legal landscape when the Supreme Court issued a new search and seizure rule that was more restrictive than state court precedent, and holding that the State was not seeking to admit the fruits of unlawful police conduct because the police fully complied with the law in effect at the time they acted).

Finally, the State realizes that the holding in *McNeely* is retroactive and applies to all cases pending on direct appeal, such as the defendant's case. But this does not mean that the exclusionary rules apply as well. Indeed, the Supreme Court has held that the federal exclusionary rule often does not apply even though a new holding is retroactive, as explained further below.

It is now up to Texas courts to decide whether the Texas exclusionary rule applies when the law changes after evidence is

obtained. This will turn on how the courts interpret the language in the Texas exclusionary rule, codified in Tex. Code Crim. Proc. art. 38.23.

Again, the State's argument is that the Texas exclusionary rule does not apply when the law changes after evidence has been obtained because, in such a situation, the evidence was not actually obtained in violation of the law.

## 2) The federal exclusionary rule does not apply because the police were acting in good faith.

The federal exclusionary rule is not codified, but rather, judicially created, and its purpose is to safeguard Fourth Amendment rights by deterring police misconduct. *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). With this purpose in mind, the Supreme Court has created several good faith exceptions. The State will argue that two exceptions apply in this case. The federal exclusionary rule will not bar the evidence if either one of the exceptions applies.

### Exception one: Good faith reliance on binding appellate precedent

One exception is when the police act in good faith reliance on binding precedent, because "It is one thing for the criminal to go free because the constable has blundered. It is quite another to set the criminal free because the constable has scrupulously adhered to governing law. Excluding evidence in such cases deters no police misconduct and imposes substantial social costs." *Davis v. United States*, 564 U.S. \_\_, 131 S. Ct. 2419, 2423-24, 2434, 180 L. Ed. 285 (2011).

The blood draw in this case was done prior to the Supreme Court's decision in *McNeely*. At that time, Texas case law clearly held that dissipation alone constituted exigent circumstances in DWI cases. *Aliff v. State*, 627 S.W.2d 166, 170 (Tex. Crim. App. 1982); *State v. Laird*, 38 S.W.3d 707, 713 (Tex. App.—Austin 2000, pet. ref'd). Exigency is an established exception to the warrant requirement, so the search in this case was constitutional under binding Texas precedent at the time it was done. Therefore, under *Davis*, the good faith exception for reliance on precedent applies. *See People v. Youn*, 2014 Cal. App. LEXIS 799 (Cal. App. 2d Dist. Aug. 15, 2014) (applying

the good faith exception for reliance on state court precedent to pre-*McNeely* blood draws); *United States v. Brooks*, No. PWG-14-0053, 2014 U.S. Dist. LEXIS 67417, at *5-15 (D. Md. May 16, 2014) (mem. op.) (same).

### *Exception two: Good faith reliance on a statute*

Another exception applies when an officer acts in good faith reliance on a statute that is later held to be unconstitutional, because "Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment by an officer who has simply fulfilled his responsibility to enforce the statute as written." *Krull*, 480 U.S. at 349-50.

As previously argued, Section 724.012(b)(3)(B) mandated the warrantless blood draw in this case. The police officer relied on this statute in obtaining the warrantless blood draw. 2RR 34-35. This reliance was in good faith because the mandatory blood draw law was not "clearly unconstitutional" before *McNeely*. Indeed, Texas's police

17

officers, prosecutors, defense attorneys, and judges have had mandatory blood draw cases for years without questioning their constitutionality. Therefore, under *Krull*, the federal exclusionary rule does not bar admission of the evidence.

## Prayer

The State asks this Court to overrule the appellant's point of error and to affirm the trial court's judgment.

Respectfully submitted,

**Rosemary Lehmberg**
District Attorney
Travis County

**Angie Creasy**
Assistant District Attorney
State Bar No. 24043613
P.O. Box 1748
Austin, Texas 78767
(512) 854-9400
Fax (512) 854-4810
Angie.Creasy@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

18

## Certificate of Compliance and Service

I hereby certify that this brief contains 3,120 words. I further certify that, on the 13th day of April, 2015, a true and correct copy of this brief was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, on the defendant's attorney: Jamie Spencer, Attorney at Law, 812 San Antonio St., Suite 403, Austin, Texas 78701.

**Angie Creasy**